Good morning, your honors. May it please the court, in this case, VA complied with its duty to assist only insofar as it invited the VA doctor's, Dr. Burton's, attention to evidence later determined by VA to be dispositive while neglecting to give the veteran an opportunity to inform his treating physician of the same evidence. It's not really the way the facts develop, is it? I mean, the veteran knew in the 60s that he had torn his knee up playing softball. He could have supplied that evidence to his doctor, couldn't he? There's no indication in the record that he specifically did not. It is just not mentioned by Dr. Sousa in his two opinions. Which gives the board and the Court of Veterans' Appeals ample record upon which to make the judgment they did, right? In fact, the 68 softball injury was considered by one doctor and not mentioned at all by the other. And so they have to make a choice. They chose the one that seemed to have the most support. I think, Your Honor, that that jumps ahead too much and ignores VA's duty to assist in this case. The duty is a duty to assist the claimant in obtaining evidence. In this case, the claimant had the evidence and himself didn't supply it to his doctor, at least as far as the record indicates, right? So there's no evidence that the claimant needed, that the department had, that it did not supply to the claimant to help him make his case, right? What the department did not do is inform Mr. Walsh what it was going to rely on to ultimately deny his claim. They gave the VA doctor two bites of the apple, if you will, in order to develop evidence to ultimately deny Mr. Walsh's claim, but did not give the same opportunity to the private evidence. And with respect, I believe it's the duty to assist. We're talking about Mr. Walsh's knee. Now, he knows what's happened to his knee in his life, right? He has a little twisty accident when he's in the military and he tears it so bad he breaks his tibia in the 60s. He knows that, right? Presumably, yes. He's trying, struggling really hard to figure out what the DVA has to do to provide him with that information. The Department of Veterans Affairs, under the duty to assist, with respect to your earlier statement, doesn't – its duty doesn't extend just to getting the evidence. It extends to substantiating his claim. And under the legislative history and under the court's interpretation of the duty to assist, substantiating his claim would presumably mean giving him a chance to develop – to have this information. He knew the information himself. Whether or not he gave it to his doctor so that the doctor could provide a particular report to the VA, is that the issue? How much did he disclose to his own doctor? And if he did disclose to him, the doctor was trying to help him by not focusing in on that injury? I have no problem that we're creating otherwise because here we're saying that if you lie to your doctor, it's fine because the VA will have to find that information and send it to the doctor and give you a second word if they have it. Your Honor, I don't believe that there is any basis in this record to conclude that Mr. Walsh misled his treating physician in any way. What Mr. Walsh did on the second time in the 1999 Dr. Sousa opinion, it could appear that Mr. Walsh gave him his service medical records because in the first examination, Dr. Sousa did not give any indication of the service medical record with him. In the second examination, Mr. Walsh knew that he had to at least get his service medical records to his doctor and did so. And that was what was sufficient to reopen. And then upon reopening, rather than doing what was simpler and going back and clarifying Dr. Sousa's opinion, which would have probably been, if you will, the most reasonable course of procedures that the VA would have taken, they went out and got a whole new opinion from VA. And then that wasn't sufficient. They again sent it back to that VA doctor. This time, he did give a sufficient opinion for them. But what was left undeveloped in this record, and the legislative history would indicate that an entire record should be substantiated, and it is VA's duty to do so, this record was incomplete. VA knew it was incomplete and did not take steps to even inform Mr. Walsh what was the nature of the incompleteness at this point. What do you mean it was incomplete? I mean Dr. Sousa's opinion is incomplete in that Dr. Sousa didn't address the 66 injury, which is what the board ultimately decided was dispositive in this case, to deny him service connection. But if he knew it existed and didn't put it in his report, what then? If Dr. Sousa knew about the particular injury and did not include it in his report? We have no way of knowing why he did or did not include it in his report. Well, that's right. And whose responsibility is that? Are you saying that it is the VA's responsibility to put Dr. Sousa on the stand and say to him, why did you not talk about that 1966 injury? What are you doing? Your Honor, I believe that it is VA's duty under the law to assist the claimant in substantiating his claim. And in substantiating his claim, they had a duty to at least tell Mr. Walsh, look, this is missing from this report. This is good enough. We have evidence that you had an injury in service, and we have evidence that you have an disability today. What's missing is that your doctor hasn't addressed these particular medical records. You keep using the term substantiating. The VA's duty to substantiate his claim. I thought it was the VA's duty to help him develop his claim. Was that the same thing? Well, under the plain language of the statute, it's self-inflicted injury under 3A. It's in obtaining evidence necessary to substantiate. So it's the obtaining evidence that they have to do. Well, but in part, in the very law. We've often referred to it as helping him develop his claim. I don't know that we've ever said it's the VA's duty to make his case for him. I don't, and there is case law that says that it is not VA's duty to make his case for him. But in the next section, Your Honor, level 2, the Secretary's Honor Report to Provide Assistance to Claimants under this section, if no reasonable possibility exists that such assistance would aid in substantiating the claim. There was a reasonable possibility in this case that asking Dr. Sousa to clarify his opinion would aid in substantiating the claimant's claim. And it is VA's burden, not the claimant's burden. It is VA's burden and its duty to assist the claimant. So in other words, just gathering the evidence in this particular instance is incomplete. And it seems to me that VA recognized that that was incomplete. It didn't just gather evidence. It got an opinion from Dr. Burton and then looked at it and said, no, this is insufficient for rating purposes. We've got to send it back to him. It seems from the record that the VA did note that it was under an obligation to substantiate this claim, to fully develop the record. And it did so. It did so with respect to the negative evidence. But it did not take the time and do what was perfectly reasonable in this case and ask for a clarification. Why didn't the VA fully satisfy its duty to assist by having its own physician examined? Mr. Walker. I don't believe that the two are mutually exclusive. Certainly under Dean 5103B-81, they found it necessary to go and get another medical examination. And they're not mutually exclusive. They can do that. There's nothing wrong with them going out to get that examination. But they should have also gone and helped the veteran to substantiate his claim and to fully develop the record. They helped the claimant obtain evidence. But he already had this evidence. In fact, this evidence was uniquely within his knowledge more than anyone else's, wasn't it? Do we have to tell people what happened to them? I believe you're asking, are you asking us to authorize the department to release private medical records without the knowledge of the claimants? No, Your Honor. And many times VA asks for veterans' permission in order to release their records. What we're saying is that they had a duty at least because what happened, VA made an adjudication. VA made a call, and it was negative to Mr. Walsh. They made that call based on the fact that their own physician was told to review the 1966 evidence and to put it in his report. The evidence that was positive for Mr. Walsh, that doctor was never given the opportunity to know that this was what was going to be disposed of. Who did he examine? I'm sorry. Who did Mr. Walsh's physician examine? Mr. Walsh. Yes, Your Honor. Wouldn't Mr. Walsh say, here's what's happened to my knee? And he may have. And he may have. We just know, all we know from the record is that Dr. Sousa, his treating physician, didn't mention it. And when it went back to Dr. Sousa, he thought, and at that time it was for, to reopen the claim. And he, I'm not saying it doesn't happen. You'd like us to engage in the assumption that Mr. Walsh's doctor knew of the instance, but just simply didn't mention it. Well, then the Veterans Administration can make exactly the same conclusion, right? That he knew of the instance. I'm, Your Honor, respectfully, I'm not asking the court to engage in any assumptions. I'm asking the court to review simply the record before it. All we have before us is the fact that Dr. Sousa went through, said this. It doesn't do much to help your point. But it's VA's duty to assist. To help our client. Assist in obtaining evidence, in this case evidence Mr. Walsh already had. Again, I think that it's to develop, I think that the duty to assist extends all the way to developing the entire record and to substantiating the claim. Secretary's not required to provide assistance if there's no reasonable possibility such assistance would aid in substantiating the claim. Well, in this case, we must assume that he already knows what happened to his knee in 66, playing softball. He must think it doesn't substantiate his claim any more than it already does, right? But it's perfectly reasonable, and I think that that's the standard. It is reasonable for VA to develop this full record if it's going to make a call on the fact that the 66 records were reviewed. If that's the call it's going to make, if that's what it's going to find as positive, VA needs to tell the veteran, needs to assist the veteran in helping him understand why his claim could conceivably be denied. That's not what the statute says. The statute says VA needs to assist the claimant in obtaining evidence. Well, the only evidence at issue here happened to be in the hands of your client. What assistance? I hear you, Mr. Stoltz, saying that, well, you know, the way they did, they shouldn't have listened to their experts so much because the record suggests the expert knew about the 66 injury, whereas it's not so clear whether Mr. Walsh's doctor knew about it. And that's a very real possibility in this case. But if the doctor or Mr. Walsh didn't know about it, it's because either Mr. Walsh hid it or the doctor deliberately didn't admit to it. I don't know which of those things happened, but I don't see how you can bring that into a statutory duty to the government to obtain evidence necessary to substantiate the claimant's claim. That's where I'm having a little trouble getting how you want us to turn this case around. I don't believe that there's anything wrong with the VA, and it is perfectly free to do so, and decided to, in this case, under D-1 of 5103 big A, go out and get its own examination. There's absolutely no problem with VA weighing that examination more than using whatever evidence they have before them as long as it's legitimate evidence, right? As long as it's fully developed evidence, as long as they've taken reasonable steps to substantiate this record. Do you want to say- Mr. Stolz, I have one question, Mr. Stolz. Yes, sir. In the board's findings, there's a statement on page 8 saying, It would appear from that that he did. It's a bit unclear, I think, whether or not he was referring to that. I mean, that opinion doesn't necessarily pinpoint it and doesn't know- I know that 20 years ago, you had a fractured opinion. Yes. Would you like to state your rebuttal, please? I would, Your Honor. Thank you. Mr. Stolz. Mr. Hopkins. May I please report? As an initial matter, of course, 5107A requires that the burden to establish the claim is on the VA. It is a sign, as the court has already indicated earlier today, that the VA is charged with trying to develop the record. And in this case, they did. They obtained all the evidence that was available. They even went out and had their own physician review that evidence. And they provided an examination to Mr. Walsh and provided an opinion. And ultimately, the board determined that they favored the one opinion over the other. There's some reference earlier by counsel about favoring negative evidence, developing negative evidence. But we submit that at the time VA determines to go out and get a medical examination from its own doctors, there is no issue with negative or positive evidence, just evidence. It's only at the time later when the decision makers are, who are different from the doctor, obviously, who are reviewing the evidence, and they make their determination about how they're going to come out of the particular case, that someone could then look back on the hindsight and say, well, the negative evidence was favored. Well, perhaps it was favored because it was predominant. Mr. Hopkins, was it? Yeah. If the veterans report that the doctors of the VA find that there's no evidence to support the particular requirement for some kind of compensation, and there's a difference between the two reports, the private report and the VA report, don't you think that maybe there is a duty on the VA to send that report over and see if that can be corrected? No. The veterans report in the Watte case, discussed in all the briefs, indicated that in a particular circumstance in which the VA is on notice that a veteran had attempted to obtain a private medical report, but that that doctor was not able to provide the report because he wasn't provided access to a certain record. In the Watte case, there was no VA medical report. Well, the issue in that case was more that one of the private medical doctors had provided a letter to a VA indicating that he would have liked to have provided a medical opinion, but was not able to because he didn't have access to the service medical records. But there was no medical report by a VA doctor in the Watte case. I may be right. I mean, I can look here to review. There was no medical examination by the VA in the Watte case. And there was one here. Which differed from the one that the private physicians were on. It differed in its depth, certainly. I think the evidence speaks for itself as far as the private physicians submitted a letter in 1992 and a letter in 1999, which were in both cases fairly top level. And while the VA report is a much more detailed report going through all the records. Well, why shouldn't the VA then be under an obligation to advise the veteran as to what the deficiencies of his report are as private physicians? They do that in their decision. That's their obligation. Their obligation is to develop the record. But at that point, it's done and over with, isn't it? Well, there's always an avenue of appeal. If the decision comes in the regional office, and there's a case of a decision based upon an inadequate report, the veteran is free to submit additional evidence before the board or even before the regional office before the case is transferred. And if the decision comes from the board, the veteran has his arguments available for the veterans. I mean, what you have here is a system that is encouraging the veteran while he's before the regional office and board to submit additional evidence. In this case, it's a perfect example of a veteran who was invited numerous times to submit evidence. And, in fact, in the facts of this case, as I think we've already discussed, they're not strong, so they come up. When you consider that Dr. Seuss has submitted a report in 1992, which is criticized in a regional office decision, for not providing sufficient discussion or detail of the in-service events. And that was in 1993, a regional office decision, and then given in 1995, or 1998, a board decision, which we have identified in our supplemental appendix. And if you look at page 7, there's, at the top of page 7 of the supplemental appendix, there's the criticism of the earlier 1992 report. And the very next paragraph talks about the 1966 documents, which the board had previously received the year before from Mr. Walsh. Subsequent to this board decision, Dr. Seuss has felt that he needed to provide another opinion, in which he now refers to the 1955 documents, but does not refer to the 1966 documents, given the fact that, presumably, he's reacting to this 1988 board decision, in which discussion of the inadequacy of his prior report is juxtaposed against the discussion of the 1966 documents. Those are not very good facts for trying to place any kind of burden on the VA in this case. As we stated in our brief, we think, ultimately, this is really just an application of the law and a fact question. The Justice Court below found that the duty to assist was complied with, that we believe is a factual question, or involving the application of the facts of the law, which the Justice Court doesn't have jurisdiction to consider, and any other complaints about the weighting of the evidence, again, would be similarly beyond this Court's jurisdiction. Thank you, Mr. Hawkey. Mr. Stoltz, you have less than a minute. Your Honor, I would simply like to point out that Mr. Hawkey alluded to the fact that there was criticism of the 1992 report, that presumably could have put the veteran on some type of notice. But after that report happened, they went and got another report from Dr. Sousa. The veteran went of his own volition, unrepresented by counsel. Mr. Stoltz, you may have less than a minute, but you don't have to talk quite so fast. We'll give you the extra time today for the sentence. Thank you, Your Honor. At the time that he went and was on some type of notice that what he had was incomplete, he went and went out of his way to go to Dr. Sousa and get a report. This report from Dr. Sousa presumably had what an unrepresented veteran at the time, I think he was assisted by a veteran's service organization, not by counsel, would think would be enough to substantiate his case. They reopened based on that evidence. What he did not know, and what VA had the duty to do to fully substantiate his claim and to gather the full record and to gather a full evidence, was that in order for this to be granted, that doctor, Dr. Sousa, would have to focus on, would have to mention, presumably, the 66 accident. Okay, I think we've heard that argument. Thank you, Mr. Stoltz. Thank you, Your Honor. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock.